33.     In the end, Exadel continued to deliver agreed to builds late and with defects that remained unfixed and without a team dedicated to delivering the Project:

> I'm concerned that the size/makeup of the team isn't sufficient to deal with the number of outstanding issues. We currently have over 50 open defects/CRs in the system, and have never had fewer than 20.

(c)     **Exadel Sticks IntraLinks with Only Certain Components of the Project, Which Themselves were Completely Unusable**

34.     Those components that Exadel were ultimately able to deliver were completely unusable. Indeed, most of the "builds" delivered failed to work or meet IntraLinks' quality control reviews, and all of the builds failed to comply with IntraLinks' internal standards and codes for computing.

35.     For example, the scroll bar, when tested, loaded the same runs over and over again – a major performance/scalability problem for IntraLinks' system. The experience was even worse when using the mouse scroll.

36.     Indeed, long past the due date for delivery, IntraLinks was forced to reject whole builds:

> We are rejecting build R14. It breaks existing expand/collapse grid functionality and includes no defect fixes critical for an alpha [release].

(d)     **Exadel Fails and Refuses to Mitigate the Defects**

37.     Even after Exadel failed timely to deliver a usable version of the Project, IntraLinks offered to continue to try and work with Exadel in an attempt to mitigate its loss. In that connection, in mid-May, 2007, IntraLinks requested that Exadel dedicate full time resources

- 10 -

to attempt to address the numerous and repeat problems with the Program's functionality. Exadel refused.

38.    In addition, Exadel failed to offer any plan to retrieve the Project, and refused to provide to, or share with, IntraLinks any data reflecting its internal test results for each of the builds it had delivered; it also failed to provide IntraLinks with user manuals and other documents discussing how the software worked and methods for troubleshooting problems with the software.

> Something has changed/happened on their end regarding Olga. She has become much less responsive recently, and that is adding to the difficulty.  During the time when our connectivity to their JIRA system was down, I had asked her more than once to send a list of the defects for the RII build so I could better track their progress – but it was never done.  I feel the same has happened with other requests for info or feedback that I've sent her recently.

> I've requested to have daily Live Meeting conference calls/desktop sharing in order to help expedite the knowledge transfer and troubleshooting process.

> Since we've had connectivity problems to the CVS server (same as JIRA issues), I've repeatedly asked them to send me the code; it has not happened yet.

39.    In the end, and as a result, IntraLinks was unable to salvage and work with any part of the software it received from Exadel.  IntraLinks was forced, on extraordinarily short notice and at great expense, to engage another computer consulting group, to recreate the features of the Project.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Breach of Contract)

40.    IntraLinks repeats and realleges each and every allegation contained in paragraphs 1 though 39 of the Complaint as if fully set forth at length herein.

41.    IntraLinks and Exadel are each parties to various written agreements including the Agreement and Statements of Work governing the development and delivery of the Project. These agreements constitute valid and binding agreements.

42.    Under the terms of the parties' written agreements, Exadel agreed, among other things, to (1) assign a team of clearly identified and highly skilled software developers to work on the Project; (2) to complete the development and delivery of carefully defined components of the Project by clearly identified and mutually agreed dates certain; (3) to prepare and deliver supporting instructional documents with the software components; and (4) to complete the developments and delivery of the Project for a carefully designed and mutually agreed upon price.

43.    At all times, IntraLinks performed its duties pursuant to the terms of the agreements with Exadel.

44.    Exadel breached the express terms of its written agreements with IntraLinks by, among other things, reassigning members of the Project team at critical points in the development process; failing and neglecting to provide sufficient resources to complete the Project in a timely and competent manner; failing to deliver components by the deadlines agreed upon by the parties; failing to provide required and necessary documentation; and delivering only certain components materially different from, and inferior to, the specifications agreed upon by the parties.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Breach of Express Warranty)

45.    IntraLinks repeats and realleges each and every allegation contained in paragraphs 1 though 44 of the Complaint as if fully set forth at length herein.

46.    The Agreement contains an express warranty for the software to be

provided to IntraLinks for the Project. Section 1.2.1 of the Agreement provides:

> All Deliverables, and IntraLinks' obligation to pay for such
> Deliverables, shall be subject to IntraLinks' review and
> acceptance of such Deliverables, such acceptance not to be
> unreasonably withheld. In the event that IntraLinks rejects any
> Deliverables, IntraLinks will inform Contractor of the reasons for
> such rejection, and Contractor will use commercially reasonable
> efforts to promptly modify such Deliverables in accordance with
> IntraLinks' instructions and to redeliver such Deliverables to
> IntraLinks in accordance with the provisions of this section.

Section 4, entitled "Representations and Warranties," also provides, in part, that

"Contractor hereby represents and warrants that it . . . (b) will perform the services

in a professional and workmanlike manner."

47.    Exadel breached the express warranty contained in the Agreement by,

among other ways, delivering components to IntraLinks that contained numerous and significant

programming errors and deficiencies; delivering components that were materially different from,

and inferior to, the specification contained in the SOWs entered into by the parties; failing to

deliver associated documents with the Project components; and failing and refusing to remedy

defects timely identified by IntraLinks.

**AS AND FOR A THIRD CAUSE OF ACTION**
(Breach of the UCC's Implied Warranties of
<u>Merchantability and Fitness for a Particular Purpose)</u>

48.    IntraLinks repeats and realleges each and every allegation contained in

paragraphs 1 though 47 of the Complaint as if fully set forth at length herein.

49.    The Agreement specifies that it shall be governed by New York law. The

Agreement and SOWs entered by the parties do not contain disclaimers of implied warranties.

- 13 -

50.    Exadel breached the implied warranties of merchantability and fitness for a particular purpose created by sections 2-314 and 2-315 of New York's Uniform Commercial Code by, among other things, failing to deliver the components of the Project that would pass without objection in the trade under the contract description; failing to deliver components that were fit for the ordinary purpose for which they were to be used; and, knowing that IntraLinks was relying on Exadel's skill and judgment to furnish the components for a particular and defined purpose, failing to deliver components fit for such purpose.

### AS AND FOR A FOURTH CAUSE OF ACTION
(Breach of the Implied Covenant of Due Care)

51.    IntraLinks repeats and realleges each and every allegation contained in paragraphs 1 though 50 of the Complaint as if fully set forth at length herein.

52.    By reason of the parties' agreements and the common law, Exadel owed IntraLinks an obligation to exercise due care in developing and delivering the Project and all of its components.

53.    Exadel breached its obligation to exercise due cure by, among other things, reassigning members of the development team and/or failing and/or neglecting to make knowledgeable members available to IntraLinks during crucial points of the development process; removing key members of the development team from the Project at crucial points in time; failing to devote adequate time, resources, and attention to the Project; failing to deliver the Project components in a timely manner; failing to cure the numerous and obvious defects that plagued the Project components delivered; and failing to develop and deliver supporting documentation for the Project components delivered.

- 14 -

## AS AND FOR A FIFTH CAUSE OF ACTION
(Breach of the Implied Covenant of Good Faith and
Fair Dealing)

54.    IntraLinks repeats and realleges each and every allegation contained in paragraphs 1 though 53 of the Complaint as if fully set forth at length herein.

55.    By reason of the parties' agreements and the common law, Exadel owed IntraLinks an obligation of good faith and fair dealing in developing and delivering the Project and all of its component parts,

56.    Exadel breached its obligation of good faith and fair dealing by, among other things, reassigning members of the development team and/or failing and/or neglecting to make knowledgeable members available to IntraLinks during crucial points of the development process; removing key members of the development team from the Project at crucial points in time; failing to devote adequate time, resources, and attention to the Project; failing to deliver the Project components in a timely manner; failing to cure the numerous and obvious defects that plagued the Project components delivered; and failing to develop and deliver supporting documentation for the Project components delivered.

## AS AND FOR A SIXTH CAUSE OF ACTION
(Negligent Performance)

57.    IntraLinks repeats and realleges each and every allegation contained in paragraphs 1 though 56 of the Complaint as if fully set forth at length herein.

58.    By reason of the parties agreements and the common law, Exadel owed IntraLinks a duty to exercise reasonable care in developing and delivering the Project components.

- 15 -

59.    Exadel failed to exercise reasonable care by, among other things, reassigning members of the development team and/or failing and/or neglecting to make knowledgeable members available to IntraLinks during crucial points of the development process; removing key members of the development team from the Project at crucial points in time; failing to devote adequate time, resources, and attention to the Project; failing to deliver the Project components in a timely manner; failing to cure the numerous and obvious defects that plagued the Project components delivered; and failing to develop and deliver supporting documentation for the Project components delivered.

WHEREFORE, IntraLinks respectfully demands judgment against Exadel awarding it:

(a)    damages of at least $250,000.00, plus interest, attributable to the amount paid by IntraLinks to Exadel;

(b)    damages in an amount to be fixed at trial, plus interest, attributable to the amounts IntraLinks paid to other software developers to develop a similar software program;

(c)    damages in an amount to be fixed at trial, plus interest, attributable to lost profits, lost business opportunities, and related expenses, proximally caused by the wrongful actions of Exadel; and

(d)    such other and further relief as to this Court seems just and proper.

Dated: New York, New York
      September 11, 2007

ANDERSON & OCHS, LLP

By:_____
    Mitchel H. Ochs
61 Broadway, Suite 2900
New York, New York 10006
(212) 634-3600

Attorneys for Plaintiff IntraLinks

- 17 -

**Exhibit C**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

INTRALINKS, INC.,                         :        07 CV 8697 (RJS)(AJP)

                          Plaintiff,      :

        -against-                         :        ANSWER

EXADEL, INC.,                             :

                          Defendant.      :
-----------------------------------------------------------X

        Defendant Exadel, Inc. ("Exadel" or "Defendant"), for its answer to the Complaint of Plaintiff Intralinks, Inc. ("Intralinks" or "Plaintiff"), and counterclaims, alleges as follows:

        1.      To the extent the allegations of Paragraph 1 of the Complaint refer to the contractor agreement (the "Agreement") or the Statements of Work ("SOWs"), Defendant refers the Court to those documents for their terms, provisions and conditions.   The remaining allegations of Paragraph 1 are denied.

        2.      Defendant denies the allegations contained in Paragraph 2 of the Complaint and alleges that Plaintiff seeks relief to which it is not entitled.

        3.      Defendant denies knowledge or information sufficient to form a belief concerning the truth of the allegations contained in Paragraph 3 of the Complaint.

        4.      Defendant admits the allegations contained in Paragraph 4 of the Complaint.

        5.      Defendant denies the allegations contained in Paragraph 5 of the Complaint.

6.      Defendant denies the allegations contained in Paragraph 6 of the Complaint, except admits that the Agreement contains a forum selection clause and refers the Court to the Agreement for its terms, provisions and conditions.

7.      Defendant denies knowledge or information sufficient to form a belief concerning the truth of the allegations contained in Paragraph 7 of the Complaint.

8.      Defendant denies knowledge or information sufficient to form a belief concerning the truth of the allegations contained in Paragraph 8 of the Complaint.

9.      Defendant denies the allegations contained in Paragraph 9 of the Complaint, except admits that the parties met in or about the Fall of 2006 to discuss the development and delivery of software.

10.     With respect to the allegations of Paragraph 10 of the Complaint, Defendant refers the Court to the Agreement and SOWs for their terms, provisions and conditions.

11.     With respect to the allegations of Paragraph 11 of the Complaint, Defendant refers the Court to the Agreement and SOWs for their terms, provisions and conditions.

12.     Defendant denies the allegations contained in Paragraph 12 of the Complaint and refers the Court to the Agreement and SOWs for their terms, provisions and conditions.

13.     With respect to the allegations of Paragraph 13 of the Complaint, Defendant admits that the parties entered into two SOWs, denies the remaining allegations therein and refers the Court to the SOWs for their terms, provisions and conditions.

14.    With respect to the allegations of Paragraph 14 of the Complaint, Defendant refers the Court to the SOWs for their terms, provisions and conditions.

15.    Defendant denies the allegations contained in Paragraph 15 of the Complaint and refers the Court to the Agreement and SOWs for their terms, provisions and conditions.

16.    Defendant denies the allegations contained in Paragraph 16 of the Complaint and refers the Court to the Agreement and SOWs for their terms, provisions and conditions.

17.    Defendant denies the allegations contained in Paragraph 17 of the Complaint and refers the Court to the Agreement and SOWs for their terms, provisions and conditions.

18.    Defendant denies the allegations contained in Paragraph 18 of the Complaint and refers the Court to the Agreement and SOWs for their terms, provisions and conditions.

19.    Defendant denies the allegations contained in Paragraph 19 of the Complaint and refers the Court to the Agreement and SOWs for their terms, provisions and conditions.

20.    Defendant denies the allegations contained in Paragraph 20 of the Complaint and refers the Court to the Agreement and SOWs for their terms, provisions and conditions.

21.    Defendant denies the allegations contained in Paragraph 21 of the Complaint and refers the Court to the Agreement and SOWs for their terms, provisions and conditions.

#276498.1

22.     Defendant denies the allegations contained in Paragraph 22 of the Complaint and refers the Court to the Agreement and SOWs for their terms, provisions and conditions.

23.     Defendant denies the allegations contained in Paragraph 23 of the Complaint.

24.     Defendant denies the allegations contained in Paragraph 24 of the Complaint.

25.     Defendant denies the allegations contained in Paragraph 25 of the Complaint and refers the Court to the Agreement and SOWs for their terms, provisions and conditions.

26.     Defendant denies the allegations contained in Paragraph 26 of the Complaint and refers the Court to the Agreement and SOWs for their terms, provisions and conditions.

27.     Defendant denies the allegations contained in Paragraph 27 of the Complaint and refers the Court to the Agreement and SOWs for their terms, provisions and conditions.

28.     Defendant denies the allegations contained in Paragraph 28 of the Complaint.

29.     Defendant denies the allegations contained in Paragraph 29 of the Complaint and refers the Court to the Agreement and SOWs for their terms, provisions and conditions.

30.    Defendant denies the allegations contained in Paragraph 30 of the Complaint and refers the Court to the Agreement and SOWs for their terms, provisions and conditions.

31.    Defendant denies the allegations contained in Paragraph 31 of the Complaint and refers the Court to the Agreement and SOWs for their terms, provisions and conditions.

32.    Defendant denies the allegations contained in Paragraph 32 of the Complaint and refers the Court to the May 6, 207 e-mail for its contents.

33.    Defendant denies the allegations contained in Paragraph 33 of the Complaint and refers the Court to the Agreement and SOWs for their terms, provisions and conditions.

34.    Defendant denies the allegations contained in Paragraph 34 of the Complaint and refers the Court to the Agreement and SOWs for their terms, provisions and conditions.

35.    With respect to the allegations of Paragraph 35 of the Complaint, Defendant denies that it caused the performance/scalability problem referred to therein and it denies knowledge or information sufficient to form a belief concerning the truth of the allegations that such a problem in fact existed.

36.    With respect to the allegations of Paragraph 36 of the Complaint, Defendant denies that there was any reasonable basis for rejecting build R14.

37.    Defendant denies the allegations contained in Paragraph 37 of the Complaint.

#276498.1                          5

38.    Defendant denies the allegations contained in Paragraph 38 of the Complaint and refers the Court to the Agreement and SOWs for their terms, provisions and conditions.

39.    Defendant denies the allegations contained in Paragraph 39 of the Complaint.

40.    Defendant repeats and realleges each and every response set forth in paragraphs 1 through 39 above, as if fully set forth herein.

41.    With respect to the allegations contained in the first sentence of Paragraph 41 of the Complaint, Defendant refers the Court to the Agreement and SOWs for their terms, provisions and conditions.  With respect to the allegations contained in the second sentence of Paragraph 41 of the Complaint, Defendant states that it contains legal conclusions to which no response is required.

42.    Defendant denies the allegations contained in Paragraph 42 of the Complaint and refers the Court to the Agreement and SOWs for their terms, provisions and conditions.

43.    Defendant denies the allegations contained in Paragraph 43 of the Complaint.

44.    Defendant denies the allegations contained in Paragraph 44 of the Complaint and refers the Court to the Agreement and SOWs for their terms, provisions and conditions.

45.    Defendant restates each and every response set forth in paragraphs 1 through 44 above, as if fully set forth herein.

#276498.1                                6

46.    With respect to the allegations contained in Paragraph 46 of the Complaint, Defendant states that they contain legal conclusions to which no response is required and refers the Court to the Agreement and SOWs for their terms, provisions and conditions.

47.    Defendant denies the allegations contained in Paragraph 47 of the Complaint and refers the Court to the Agreement and the SOWs for their terms, provisions and conditions.

48.    Defendant repeats and realleges each and every response set forth in paragraphs 1 through 47 above, as if fully set forth herein.

49.    With respect to the allegations contained in Paragraph 49 of the Complaint, Defendant states that they contain legal conclusions to which no response is required and refers the Court to the Agreement and the SOWs for their terms, provisions and conditions.

50.    Defendant denies the allegations contained in Paragraph 50 of the Complaint and refers the Court to the Agreement and SOWs for their terms, provisions and conditions.

51.    Defendant repeats and realleges each and every response set forth in paragraphs 1 through 50 above, as if fully set forth herein.

52.    With respect to the allegations contained in Paragraph 52 of the Complaint, Defendant states that they contain legal conclusions to which no response is required.

53.    Defendant denies the allegations contained in Paragraph 53 of the Complaint and refers the Court to the Agreement and SOWs for their terms, provisions and conditions.

54.    Defendant repeats and realleges each and every response set forth in paragraphs 1 through 53 above, as if fully set forth herein.

55.    With respect to the allegations contained in Paragraph 55 of the Complaint, Defendant states that they contain legal conclusions to which no response is required.

56.    Defendant denies the allegations contained in Paragraph 56 of the Complaint and refers the Court to the Agreement and SOWs for their terms, provisions and conditions.

57.    Defendant repeats and realleges each and every response set forth in paragraphs 1 through 56 above, as if fully set forth herein.

58.    With respect to the allegations contained in Paragraph 58 of the Complaint, Defendant states that they contain legal conclusions to which no response is required.

59.    Defendant denies the allegations contained in Paragraph 59 of the Complaint and refers the Court to the Agreement and SOWs for their terms, provisions and conditions.

### FIRST AFFIRMATIVE DEFENSE

60.    Plaintiff's Complaint fails to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

61.    Any delays, increased costs and/or other problems with respect to the production and delivery of the software were due to the acts and/or omissions of Plaintiff.

### THIRD AFFIRMATIVE DEFENSE

62.    Plaintiff's claims are barred by the doctrines of waiver and estoppel.

### FOURTH AFFIRMATIVE DEFENSE

63.    Plaintiff breached paragraph 3 of the Agreement by disclosing confidential information in its Complaint without Defendant's written consent.

### FIFTH AFFIRMATIVE DEFENSE

64.     Plaintiff has failed to mitigate its damages.

### SIXTH AFFIRMATIVE DEFENSE

65.     Plaintiff's claims are barred by the equitable doctrine of unclean hands.

### COUNTERCLAIMS

66.     The Counterclaims set forth herein by Exadel, Inc. ("Exadel") seek to recover for services which it performed for IntraLinks, Inc. ("IntraLinks") at its request but for which IntraLinks has refused pay. In or about March 2007, after Exadel had substantially completed the work that was required by the Agreement and the SOWs, IntraLinks approached Exadel and asked that it assist Intralinks in integrating the software which Exadel had developed for IntraLinks (the "Integration Work") and that Exadel provide Intralinks with additional features to complement the software which Exadel had already delivered to Intralinks ("Additional Features") (the Integration Work and Additional Features are collectively referred to hereafter as the "New Work"). Since the New Work was not covered by the Agreement or SOWs, Exadel requested that a new contract be executed between the parties. IntraLinks promised that a new contract would be executed and it requested Exadel in the meantime to commence the New Work. Relying upon this promise and the understanding between the parties that IntraLinks would pay for the New Work, Exadel began the Integration Work and the development of the Additional Features for IntraLinks. The parties agreed that the New Work would be performed during April, May and June of 2007. Despite the agreement between the parties, IntraLinks has failed and refused to make the required payments for the New Work which Exadel performed. Furthermore, despite the parties' agreement that the New Work would

#276498.1

9

be performed through June 2007, on or about May 30, 2007 IntraLinks terminated the agreement, without notice and without excuse or justification.

## FIRST COUNTERCLAIM
### (Breach of Contract – Goods and Services Sold and Delivered)

67.    Counterclaimant repeats and realleges each and every allegation set forth in paragraphs 66 above, as if fully set forth herein.

68.    Counterclaimant Exadel is a corporation duly organized under the laws of the State of California, with its principal place of business at 1850 Gateway Boulevard, Suite 1080, Concord, California. Exadel is in the business of providing specialty software programs and related computer consulting services.

69.    Upon information and belief, counterclaim-defendant IntraLinks is a corporation duly organized under the laws of the State of Delaware, with its principal place of business at 1372 Broadway, New York, New York. Upon information and belief, IntraLinks is engaged in the business of providing online document sharing services between and among businesses.

70.    This Court has jurisdiction over this action pursuant to Rule 13 of the Federal Rules of Civil Procedure and 28 U.S.C. §1332(a)(2) because the parties are of diverse citizenship and the amount in controversy, exclusive of interest and costs, exceeds $75,000.00.

71.    In or about March 2007, Exadel and IntraLinks entered into an oral agreement wherein Exadel agreed to perform Integration Work for IntraLinks and develop Additional Features for Intralinks at discounted rates (the "New Agreement").

72.    Exadel requested that the parties enter into a written agreement to memorialize the parties' understanding regarding the New Work which Exadel agreed to provide IntraLinks.

#276498.1                                    10

73.    IntraLinks indicated that it would prepare a written agreement, but requested in the meantime that Exadel commence the New Work.

74.    Exadel agreed to perform the services upon the promise and understanding that IntraLinks would pay for those services, irrespective of the existence of a written agreement.

75.    The term of the New Agreement was from April 1, 2007 through June 30, 2007.

76.    During the months of April and May, 2007 Exadel performed the services requested by IntraLinks.

77.    IntraLinks accepted Exadel's services, while assuring it that a written agreement would be executed shortly.  No written agreement was ever presented by IntraLinks.

78.    On or about May 30, 2007, without excuse or justification, IntraLinks terminated the New Agreement, without notice, despite the fact that the parties had agreed that the New Agreement would continue until the end of June 2007.

79.    Relying upon IntraLinks' promise that the agreement would be for a three-month period, Exadel leased an apartment in Boston for one of its employees so that he could relocate to work on-site for IntraLinks.  Exadel was required to pay $7,775.00 for the apartment lease, but was unable to cancel the lease when IntraLinks unexpectedly terminated the New Agreement.

80.    In addition, Exadel spent $348.80 on an airline ticket for its employee to fly to Boston on May 8, 2007, so he could be available to IntraLinks through June 2007.

81.    IntraLinks accepted all of the services which Exadel provided to it throughout April and May, 2007.

82.    On or about April 25, 2007, Exadel sent IntraLinks an invoice for services rendered during the month of April, 2007 at the discounted amount of $30,000.00.

83.    On or about June 7, 2007, Exadel sent IntraLinks an invoice for services rendered during the month of May, 2007 at the discounted amount of $30,697.

84.    Despite due demand, therefor, IntraLinks has failed to pay for the services which were provided pursuant to the parties' agreement.

85.    Since IntraLinks has failed to timely pay the discounted sum of $60,697 for Exadel's services and thereby breached the New Agreement, Exadel is entitled to its usual and customary rates for such services, in the amount of $72,185.00.

86.    IntraLink's failure to pay for the aforementioned services constitutes a breach of the New Agreement.

87.    By reason of the foregoing breach of contract, Exadel is entitled to damages in the amount of $80,308.80, plus interest.

**SECOND COUNTERCLAIM**
**(Unjust enrichment)**

88.    Counterclaimant repeats and realleges each and every allegation set forth in paragraphs 66 through 87 above, as if fully set forth herein.

89.    IntraLinks received a benefit as a result of the Integration Work and Additional Features which were provided to it by Exadel.

90.    IntraLinks has failed and refused to pay for the reasonable value of such services, despite due demand therefor and, consequently, IntraLinks has been unjustly enriched in the amount of $80,308.80, plus interest.

## THIRD COUNTERCLAIM
### (Breach of Covenant of Good Faith and Fair Dealing)

91.     Counterclaimant repeats and realleges each and every allegation set forth in paragraphs 66 through 90 above, as if fully set forth herein.

92.     Implicit in the New Agreement between the parties is an obligation of good faith and fair dealing, which requires each party to refrain from any act or omission that would injure or destroy the right of the other party to receive the fruits and benefits of their agreement.

93.     IntraLinks lured Exadel into continuing to perform Integration Work and the development of Additional Features and devoting manpower and resources for the benefit of IntraLinks by, among other things, continuing to promise to pay for this work. However, upon information and belief, IntraLinks never intended to pay for these services but instead was planning to terminate Exadel and replace it with another computer consulting firm.

94.     By its acts and omissions, described more particularly above, IntraLinks knowingly, willfully, intentionally and maliciously failed to fulfill its implied covenant of good faith and fair dealing implicit in the New Agreement with Exadel. By reason of the forgoing breach of the covenant of good faith and fair dealing, Exadel is entitled to damages against IntraLinks in an amount to be determined at trial.

**WHEREFORE,** Defendant Exadel demands judgment dismissing the Complaint of IntraLinks and judgment against IntraLinks on its counterclaims as follows:

(a)     On the First Counterclaim, damages in the amount of $80,308.80 plus interest;

#276498.1                                    13

(b)    On the Second Counterclaim, damages in the amount of $80,308.80, plus interest;

(c)    On the Third Counterclaim, damages in an amount to be determined at trial; and

(d)    On all counterclaims, reasonable attorneys' fees, the costs and disbursements of this action and such other, further and different relief as to the Court seems just and proper.

Dated:  New York, New York
        October 16, 2007

                              KANE KESSLER, P.C.


                              By: _____
                                    Jeffrey H. Daichman (JD-8802)
                                    Gillian Overland (GO-7300)
                              Attorneys for Defendant
                              1350 Avenue of the Americas
                              New York, New York 10019
                              (212) 541-6222

TO:    Mitchel H. Ochs, Esq.
       **ANDERSON & OCHS, LLP**
       Attorneys for Plaintiff
       61 Broadway, Suite 2900
       New York, New York 10006
       (212) 334-3600

#276498.1                        14

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK        )
                         ) ss.:
COUNTY OF NEW YORK       )

        I, **SANDRA AYALA**, being duly sworn, say:

        I am not a party to the within action, am over 18 years of age, and reside at Levittown, New York.

        On October 16, 2007, I served the within:

### ANSWER

by delivering a true copy thereof, enclosed in a post-paid wrapper, in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State, addressed to the following:

    Mitchel H. Ochs, Esq.
    **ANDERSON & OCHS, LLP**
    Attorneys for Plaintiff
    61 Broadway, Suite 2900
    New York, New York 10006

_____
                      SANDRA AYALA

Sworn to before me this
16th day of October, 2007

_____
Notary Public

CLARA LOUISE KAISER
Notary Public, State of New York
No. 01KA4922949
Qualified in Nassau County
Commission Expires March 7, 2010

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

INTRALINKS, INC.,

                Plaintiff,

       -against-

EXADEL, INC.,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Case No.: 07 CIV 8697 (RJS)

**CASE MANAGEMENT PLAN
AND SCHEDULING ORDER**

ECF

RICHARD J. SULLIVAN, District Judge:

      At the conference before the Court held on **February 5, 2008**, this Case

Management Plan and Scheduling Order was adopted in accordance with Rules 16-26(f)

of the Federal Rules of Civil Procedure.

1.     All the parties do not consent to disposition of this case by a
        Magistrate Judge, pursuant to 28 U.S.C. § 636(c).

2.

        a.     Plaintiff requests that this case be tried by a jury.

        b.     Defendant maintains that Plaintiff has not timely sought
               trial by jury

3.     No additional parties may be joined except with leave of the Court.

4.     Amended pleadings may not be filed except with leave of the
        Court.

5.     Initial disclosures pursuant to Rule 26(a)(1) will be completed no
        later than **March 14, 2008**.

6.     All <u>fact</u> discovery is to be completed no later than **August 29,
        2008**.

7.     The parties are to conduct discovery in accordance with the
        Federal Rules of Civil Procedure and the Local Rules of the
        Southern District of New York.  The following interim deadlines
        may be extended by the parties on consent without application to

the Court, provided the parties meet the fact discovery completion date in ¶ 6 above.

a.    Initial requests for production of documents to be served by **March 31, 2008;**

b.    Interrogatories to be served by **March ~~19~~ 2008**; *31*

c.    Depositions to be completed by **July 30, 2008.**

      i.    Unless the parties agree or the Court so orders, depositions are not to be held until all parties have responded to initial request for document production.

      ii.    There is no priority in depositions by reason of a party's status as plaintiff or defendant.

      iii.    Unless the parties agree or the Court so orders, non-party depositions shall follow initial party depositions.

d.    Requests to Admit to be served no later than **August 11, 2008.**

8.    All <u>expert</u> disclosures, including reports, production of underlying documents, and depositions are to be completed by:

a.    Expert(s) of Plaintiff by **August 15 2008;**

b.    Expert(s) of Defendant by **August 29, 2008.**    *September 5*

9.    All discovery is to be completed no later than ~~July 15,~~ **2008**.

10.    The Court has scheduled a post-discovery status conference (see ¶ 16) for _____, **2008 at** _____

11.    Pre-Motion letters regarding dispositive motions, if any, are to be submitted no later than **August 27, 2008**. In accordance with this Court's Individual Rule 2.A, response letters thereto are to be submitted by **September 3, 2008.**

12.    All counsel must meet for at least one hour to discuss settlement not later than two weeks following the close of fact discovery. Accordingly, Counsel for parties have discussed holding a settlement conference before a Magistrate Judge or the southern District's Mediation Program and request: [check one]

a.    ___X___ Referral to a Magistrate Judge for settlement discussions.

b.    _____ Referral to the Southern District's Mediation Program.

13.    The parties shall submit a Joint Pretrial Order prepared in accordance with the undersigned's Individual Practice Rule 3 and Rule 26(a)(3). If this action is to be tried before a jury, proposed voir dire, jury instructions, and a verdict form shall be filed with the Joint Pretrial Order. Counsel are required to meet and confer on jury instructions and verdict forms in an effort to make an agreed upon submission.

14.    Parties have conferred and their present best estimate of the length of trial is three (3) days.

— — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — —

TO BE COMPLETED BY THE COURT:

15.    [other directions to the parties:]

16.    The post-discovery status conference is scheduled for _____ at _____.

SO ORDERED:


DATED:    New York, New York
          February _____, 2008

                              _____
                              RICHARD J. SULLIVAN
                              UNITED STATES DISTRICT JUDGE

**Exhibit D**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

INTRALINKS, INC.,                                   :
                                                    :     Case No.: 07 civ 8697
                        Plaintiff,                  :
                                                    :
            -against-                               :     **REPLY TO COUNTERCLAIMS**
                                                    :
EXADEL, INC.,                                       :
                                                    :
                        Defendant.                  :
                                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

        Plaintiff Intralinks, Inc. ("Intralinks"), as and for its Reply to the Counterclaims of

defendant Exadel, Inc. ("Exadel") set forth in its Answer, dated October 16, 2007 (the

"Counterclaims"), states as follows:

        1.      Denies the truth of all allegations in paragraphs 66, 67, 71, 72, 73, 74, 75,

76, 77, 78, 81, 84, 85, 86, 87, 88, 89, 90, 91, 92, 93 and 94 of the Counterclaims.

        2.      Denies knowledge or information sufficient to form a belief as to the truth

of the allegations in paragraphs 68, 79 and 80 of the Counterclaims.

        3.      Admits the truth of the allegations in paragraph 69 of the Counterclaims.

        4.      Denies the truth of so much of the allegations in paragraph 70 of the

Counterclaims as alleges that this Court has jurisdiction over the Counterclaims and/or that the

amount in controversy exceeds $75,000.00.

        5.      Denies the truth of the allegations in paragraphs 82 and 83 of the

Counterclaims, except admits that Intralinks received invoices from Exadel, and otherwise avers

that Intralinks timely objected to the invoices rendered by Exadel and that Exadel was never

reasonably lead to believe that Intralinks had accepted the "services" purportedly "rendered" by

Exadel.

AS AND FOR A FIRST
<u>AFFIRMATIVE DEFENSE</u>

6.    This Court lacks subject matter jurisdiction over the Counterclaims.

AS AND FOR A SECOND
<u>AFFIRMATIVE DEFENSE</u>

7.    The Counterclaims fail to state a cause of action upon which relief can be

granted.

AS AND FOR A THIRD
<u>AFFIRMATIVE DEFENSE</u>

8.    The Counterclaims are barred in whole or in part by the Statute of Frauds.

AS AND FOR A FOURTH
<u>AFFIRMATIVE DEFENSE</u>

9.    The Counterclaims are barred in whole or in part by the doctrines of

waiver and/or estoppel.

AS AND FOR A FIFTH
<u>AFFIRMATIVE DEFENSE</u>

10.    The Counterclaims are barred in whole or in part by the doctrine of

unclean hands.

AS AND FOR A SIXTH
<u>AFFIRMATIVE DEFENSE</u>

11.    The Counterclaims are barred in whole or in part by the doctrine of laches.

AS AND FOR A SEVENTH
<u>AFFIRMATIVE DEFENSE</u>

12.    Intralinks timely objected to the invoices rendered by Exedel.

- 2 -

AS AND FOR AN EIGHTH
AFFIRMATIVE DEFENSE

13.    Upon information and belief, Exadel engaged in culpable conduct which

caused the damages, if any, sustained by Exadel in whole or part.

Dated:    New York, New York
          October 30, 2007

                                   ANDERSON & OCHS, LLP


                                   By: _____
                                        Mitchel H. Ochs (MO-7796)
                                        Chase C. Vergari (CV-0601)
                                   61 Broadway, Suite 2900
                                   New York, New York 10006
                                   (212) 344-3600

                                   *Attorneys for plaintiff and counter defendant*
                                   *Intralinks, Inc.*

To:     Jeffrey H. Daichman
        Gillian Overland
        Kane Kessler, P.C.
        1350 Avenue of the Americas
        New York, New York 10019

        *Attorneys for defendant and counterclaimant*
        *Exadel, Inc.*

**Exhibit E**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #
FILED: _1/17/08_

Intralinks, Inc.,

                              Plaintiff,

        -v-

Exadel, Inc.,

                              Defendants.

Case No. 07-CV-08697 (RJS)

ORDER
ECF

RICHARD J. SULLIVAN, District Judge:

The above-entitled action has been assigned to my docket. Accordingly, the parties are hereby ORDERED to appear for a status conference on **February 5, 2008 at 10:30am** in Courtroom **21C** of the United States District Court for the Southern District of New York, 500 Pearl Street, NYC.

IT IS HEREBY ORDERED that, by **5pm on January 29**, the parties shall jointly submit a letter, not to exceed five (5) pages, providing, in separate paragraphs:

(1)    A brief statement of the nature of the action and the principal defenses thereto;

(2)    A brief description of all outstanding motions and/or outstanding requests to file motions;

(3)    A list of all existing deadlines and any upcoming conferences that were previously scheduled;

(4)    A brief description of any discovery remaining, specifying that which is necessary for the parties to engage in meaningful settlement negotiations;

(5)    A list of all prior settlement discussions, including the date, the parties involved, and the approximate duration of such discussions, if any;

(6)    The estimated length of trial;

(7)    Any other information that you believe may assist this Court in resolving this action.

In addition, the parties are directed to complete the Case Management plan and Order that can be accessed from my Individual Rules on the SDNY website at **http://www1.nysd.uscourts.gov/judge_info.php?id=99** and submit it to the Court not later than **5pm on January 29**.

The status letter and the proposed Case Management plan submitted to the Court pursuant to this Order should be e-mailed directly to my case manager in chambers, at the following e-mail address- **eileen_levine@nysd.uscourts.gov**. Do not file thru ECF. Please consult my Individual Rules with respect to communications with chambers and related matters.

SO ORDERED.
DATED:
New York, New York _Jan. 17_, 2008

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE

**Exhibit F**

# ANDERSON & OCHS, LLP

61 BROADWAY, SUITE 2900
NEW YORK, NEW YORK 10006
TELEPHONE (212) 344-3600
TELECOPIER (212) 344-0970
WWW.ANDERSONOCHS.COM

MITCHEL H. OCHS
MEMBER
MOCHS@ANDERSONOCHS.COM

January 23, 2008

**VIA TELECOPIER**

Jeffrey H. Daichman, Esq.
Kane Kessler, P.C.
1350 Avenue of the Americas
New York, New York 10019

        Re:    Intralinks, Inc. v. Exadel, Inc.

Dear Mr. Daichman:

        I enclose:

                (a) proposed form of Case Management Plan and Scheduling Order; and

                (b) draft letter to the Court;

both in accordance with Judge Sullivan's January 17, 2007 Order; both due in Court on or before February 5, 2008.

        Kindly let me have your comments and suggested changes at your earliest convenience.

        Very truly yours,

Mitchel H. Ochs

MHO:db
Encls.
1889.01

```
                           TRANSACTION REPORT
                                                          JAN-23-2008 WED 10:52 AM

      FOR:   ANDERSON & OCHS, LLP          212 344 0970
  ─────────────────────────────────────────────────────────────────────
       SEND
  ─────────────────────────────────────────────────────────────────────
     DATE  START    RECEIVER         TX TIME   PAGES TYPE        NOTE          M#  DP
  ─────────────────────────────────────────────────────────────────────
   JAN-23 10:52 AM 12122453009         54"       9  FAX TX       OK            960
  ─────────────────────────────────────────────────────────────────────

                                        TOTAL :          54S  PAGES:   9
```

## ANDERSON & OCHS, LLP
61 BROADWAY, SUITE 2900
NEW YORK, NEW YORK 10006
TELEPHONE (212) 344-3600
TELECOPIER (212) 344-0970

WWW.ANDERSONOCHS.COM

## FAX COVER SHEET

| To: | Jeffrey H. Daichman, Esq. | Fax No.: | (212) 245-3009 |
| | | Company: | Kane Kessler, P.C. |
| From: | Mitchel. H. Ochs, Esq. | Client/Matter #: | 1889.01 |
| Date: | January 23, 2008 | Pages: | 9    (including cover sheet) |
| Subject: | IntraLinks v. Exadel | | |

MESSAGE:

Please see attached.

Confidentiality Note: This facsimile contains privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this facsimile is not the intended recipient or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination or copying of this facsimile is strictly prohibited. If you have received this facsimile in error, please immediately notify us by telephone and return the original facsimile to us at the above address via the U.S. Postal Service. Thank you.

Exhibit G

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: X 2/5/08

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -

INTRALINKS, INC.,                                     :          Case No.: 07 CIV 8697 (RJS)

                        Plaintiff,                    :          **CASE MANAGEMENT PLAN**
                                                                 **AND SCHEDULING ORDER**
           -against-                                  :
                                                                 ECF
EXADEL, INC.,                                         :

                        Defendant.                    :
                                                      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

RICHARD J. SULLIVAN, District Judge:

          At the conference before the Court held on **February 5, 2008**, this Case

Management Plan and Scheduling Order was adopted in accordance with Rules 16-26(f)

of the Federal Rules of Civil Procedure.

1.  All the parties do not consent to disposition of this case by a
    Magistrate Judge, pursuant to 28 U.S.C. § 636(c).

2.
    a.  Plaintiff requests that this case be tried by a jury.

    b.  Defendant maintains that Plaintiff has not timely sought
        trial by jury

3.  No additional parties may be joined except with leave of the Court.

4.  Amended pleadings may not be filed except with leave of the
    Court.

5.  Initial disclosures pursuant to Rule 26(a)(1) will be completed no
    later than **March 14, 2008**.

6.  All fact discovery is to be completed no later than **August 29,**
    **2008**.

7.  The parties are to conduct discovery in accordance with the
    Federal Rules of Civil Procedure and the Local Rules of the
    Southern District of New York.  The following interim deadlines
    may be extended by the parties on consent without application to

the Court, provided the parties meet the fact discovery completion date in ¶ 6 above.

a.    Initial requests for production of documents to be served by **March 31, 2008**;

b.    Interrogatories to be served by March ~~19~~ *31*, 2008;

c.    Depositions to be completed by **July 30, 2008.**

      i.    Unless the parties agree or the Court so orders, depositions are not to be held until all parties have responded to initial request for document production.

      ii.   There is no priority in depositions by reason of a party's status as plaintiff or defendant.

      iii.  Unless the parties agree or the Court so orders, non-party depositions shall follow initial party depositions.

d.    Requests to Admit to be served no later than **August 11, 2008.**

8.    All <u>expert</u> disclosures, including reports, production of underlying documents, and depositions are to be completed by:

a.    Expert(s) of Plaintiff by **August 15 2008**;

b.    Expert(s) of Defendant by **August 29, 2008.**  *September 5*

9.    All discovery is to be completed no later than ~~July 15~~ 2008.

10.   The Court has scheduled a post-discovery status conference (see ¶ 16) for ___Sept. 18___, 2008 at ___4 p.m.___

11.   Pre-Motion letters regarding dispositive motions, if any, are to be submitted no later than **August 27, 2008.**  In accordance with this Court's Individual Rule 2.A, response letters thereto are to be submitted by **September 3, 2008.**

12.   All counsel must meet for at least one hour to discuss settlement not later than two weeks following the close of fact discovery. Accordingly, Counsel for parties have discussed holding a settlement conference before a Magistrate Judge or the southern District's Mediation Program and request: [check one]

a.    ___X___ Referral to a Magistrate Judge for settlement
discussions. *MJ Peck will contact the parties by mid April 2008.*

b.    _____ Referral to the Southern District's Mediation
Program.

13.    The parties shall submit a Joint Pretrial Order prepared in
accordance with the undersigned's Individual Practice Rule 3 and
Rule 26(a)(3). If this action is to be tried before a jury, proposed
voir dire, jury instructions, and a verdict form shall be filed with
the Joint Pretrial Order. Counsel are required to meet and confer
on jury instructions and verdict forms in an effort to make an
agreed upon submission.

14.    Parties have conferred and their present best estimate of the length
of trial is three (3) days.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

TO BE COMPLETED BY THE COURT:

15.    [other directions to the parties:] *Parties are to submit papers re: plaintiff's alleged waiver do jury trial; plaintiff's paper by Feb. 15; deft response by February 26.*

16.    The post-discovery status conference is scheduled for
*Sept. 18* at *4 pm*

SO ORDERED:

DATED:    New York, New York
February *5* , 2008

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE

Case No. 07 CIV 8697:
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

INTRALINKS, INC.,

                Plaintiff,

     -against-

EXADEL, INC.,

                Defendant.

## NOTICE OF MOTION, DECLARATION
## WITH EXHIBITS

### ANDERSON & OCHS, LLP
ATTORNEYS FOR PLAINTIFF
INTRALINKS

OFFICE AND POST OFFICE ADDRESS, TELEPHONE
61 BROADWAY, SUITE 2900
NEW YORK, NEW YORK 10006

(212) 344-3600