UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X

INTRALINKS, INC.,                                      :

                        Plaintiff,              :     Case No.: 07 Civ 8697 (RJS)

    -against-                                       :     (Filed Electronically)

EXADEL, INC.,                                           :

                    Defendant.            :

-------------------------------------------------------------------- X

        MITCHEL H. OCHS, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury as follows:

        1.     I am admitted to the Bar of this Court, and I am a member of the law firm of Anderson & Ochs LLP, attorneys for plaintiff, IntraLinks, Inc. ("IntraLinks"). I respectfully submit this declaration in support of IntraLinks' motion for leave to file a late jury demand.

        2.     Annexed as Exhibit A, is a true and correct copy of the Complaint filed on behalf of IntraLinks in the New York State Supreme Court.

        3.     Annexed as Exhibit B, is a true and correct copy of defendant Exadel, Inc. ("Exadel")'s Notice of Removal.

        4.     Annexed as Exhibit C, is a true and correct copy of Exadel's Answer and Counterclaim.

        5.     Annexed as Exhibit D, is a true and correct copy of IntraLinks' Reply to Counterclaim.

6.      Annexed as Exhibit E, is a true and correct copy of this Court's January 17, 2008 Order.

7.      Annexed as Exhibit F, is a true and correct copy of a January 23, 2008 letter from me to counsel for Exadel enclosing a proposed form of Case Management Plan and Scheduling Order.

8.      Annexed as Exhibit G, is this Court's February 5, 2008 Scheduling Order.

I declare under penalty of perjury that the foregoing is true and correct.

_____
Mitchel H. Ochs

Dated: February 7, 2008

**Exhibit A**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

INTRALINKS, INC.,                             :         Complaint Filed:
                                                        September ___, 2007
                       Plaintiff,             :

       -against-                              :         Index No.

EXADEL, INC.,                                 :
                                                        **SUMMONS**
                       Defendant.             :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

                    TO THE ABOVE-NAMED DEFENDANT:

       YOU ARE HEREBY SUMMONED to answer the Complaint in this action and to

serve a copy of your answer or, if the Complaint is not served with this Summons, to serve a

notice of appearance on plaintiff's attorney(s) within 20 days after service of this Summons,

exclusive of the day of service (or within 30 days after service is completed if this Summons is

not personally delivered to you within the State of New York); and in case of your failure to

appear or answer, judgment will be taken against you by default for the relief demanded in the

Complaint.

       The basis for venue is a written agreement between the parties fixing the place of

trial in New York Country, New York.

Dated: New York, New York
       September 11, 2007

                                    ANDERSON & OCHS, LLP

                                    By:_____
                                        Mitchel H. Ochs
                                    61 Broadway, Suite 2900
                                    New York, New York 10006
                                    (212) 334-3600

                                    Attorneys for Plaintiff IntraLinks

Defendant's Address:

Exadel, Inc.
c/o C T Corporation System
111 Eighth Avenue
New York, New York  10011

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

INTRALINKS, INC.,

               Plaintiff,

      -against-

EXADEL, INC.,

               Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Index No.:

**COMPLAINT**

Plaintiff, IntraLinks, Inc. ("IntraLinks"), by and through counsel, as and for its Complaint against defendant Exadel, Inc. ("Exadel"), alleges as follows:

## PRELIMINARY STATEMENT

1.    IntraLinks engaged Exadel to build, on a time-is-of-the-essence basis, a state of the art software program containing flexible, reusable, user interface components to be specifically designed for use with IntraLinks' next-generation business application (the "Project"). Midstream into the Project, Exadel effectively abandoned the Project by, among other ways: (a) reassigning certain key developers/project managers, who, from the beginning, had been working on, and were well-familiar with, the Project; (b) replacing those resources with fewer, part-time, personnel entirely unfamiliar with, and unable to complete, the Project; (c) reneging on its earlier commitment to develop and deliver certain essential components of the Project precisely because of the lack of resources it was willing to devote; and (d) then delivering, in an untimely manner, a stripped-down version of only certain elements of the Project. Exadel strung IntraLinks along in the process, promising/representing to fix functional

and performance defects that, in the end, Exadel was unable/unwilling to do, all the while exerting leverage to continue to collect monthly fees. Because of breached promises, missed deadlines, dropped balls and inexcusable neglect, Exadel ultimately failed to deliver the Project in any usable form.

2.     By this action, Intralinks seeks recovery against Exadel for the hundreds of thousands of dollars already paid Exadel, and the many hundreds of thousands of dollars more in costs incurred to redevelop a working form of the Project, as well as other lost opportunity damages as a result of the delayed rollout and implementation of the Project, all due to the unlawful actions of Exadel.

## STATEMENT OF CASE

A.     The Parties

3.     IntraLinks is a corporation organized and existing under the laws of the State of Delaware, and having its principal place of business at 1372 Broadway, New York, New York. IntraLinks provides secure, online, document sharing services between and among large financial, legal, accounting, and other businesses.

4.     Upon information and belief, Exadel is a corporation organized and existing under the laws of the State of California, and having its principal place of business at 1850 Gateway Blvd., Suite 1080, Concord, California. Upon information and belief, Exadel is in the business of providing specialty software programs and related computer consulting services.

B.     Jurisdiction and Venue

5.     This Court has jurisdiction over the subject matter of IntraLinks' claims pursuant to Rule 302 of the Civil Practice Law and Rules of the State of New York.

- 2 -

6.     This Court has personal jurisdiction over Exadel, which has expressly consented to the exclusive personal jurisdiction of the state and federal courts located in New York County, New York.  In addition, Exadel regularly and systematically conducts business in New York, and the causes of action against it arise from: (a) the transaction of business in New York, and/or (b) tortious acts committed by it in New York, and/or (c) tortious acts committed by it outside New York where it either regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or delivered or services rendered in New York, or expects or reasonably should expect its acts to have consequences in New York and derives substantial revenues from interstate and international commerce.

C.     Background Facts

7.     Beginning in or about the later Summer or early Fall of 2006, IntraLinks began considering outsourcing a software development project to develop generic visual components for IntraLinks' use in building secure websites for its customers.

8.     The Project was a critical part of IntraLinks' next-generation application, intended to enable its clients to better interface and use its proprietary document sharing services using state of the art technology.

9.     In that connection, in or about the Fall of 2006, representatives of IntraLinks met with representatives of Exadel to discuss the development and delivery of this software.  During these discussions, IntraLinks made most clear the importance of the software to its business application under development as well as the time-of-the-essence requirements for delivery and implementation of the Project.

### IntraLinks Engages Exadel

10.    Following on these discussions, in or about late December, 2006 or early January, 2007, IntraLinks and Exadel entered into a contractor agreement (the "Agreement"). The Agreement memorialized Exadel's retention to perform various computer development and consulting services on a task-by-task basis, as would be further defined in agreed-upon Statements of Work ("SOWs").

11.    Under the terms of the Agreement, Exadel expressly undertook to provide sufficient qualified personnel to perform any and all work developed and delivered pursuant to an agreed-upon SOW in a competent and workmanlike manner, and to do so in a timely and professional manner consistent with industry standards.

12.    Exadel further agreed that all software delivered to IntraLinks would be free of programming errors and from defects in workmanship and materials, and would conform to the performance capabilities, characteristics, specifications, functions, and other descriptions and standards applicable thereunder and as set forth in the related SOW.

### The Parties Define the Project, and the Time and Cost of Development

13.    In or about December, 2006 and/or January, 2007, the parties entered into two SOWs governing the scope, timing and cost of the design, development and delivery of the Project.

14.    Among other things, the SOWs defined the component parts or "deliverables" for the Project into nine separate components including: (a) Advanced Data Grid; (b) Advanced Data Tree; (c) Dialog Window; (d) Split Pane; (e) Drag Drop Tooltips; (f) Search Bar; (g) Expand/Collapse Grid; (h) Filter Bar; and (i) Tags.

- 4 -

15.     Exadel further committed to commence development work on the Project on or before January 15, 2007, and to complete and deliver all component parts on or before March 2, 2007, in stages, or "builds," each representing a finished individual element of the Project.

16.     Exadel further undertook to devote a specific number of full-time and part-time personnel, both off-shore and on-shore, including a Project Manager, a Project Architect, Senior Program Developers, and a Quality Assurance team.  Exadel estimated the cost to develop and deliver the Project, based on the agreed upon timeline for completion of the Projects and the cost of the dedicated resources, payable on a monthly flat-fee basis during the term of the Agreement.

17.     Finally, Exadel agreed that all software deliverables would meet IntraLinks' internal uniform codes and standards for computing.

### Exadel Fails and Neglects to Build and Deliver the Project In Breach of Its Duties

18.     On the heels of the execution of the two SOWs, and in blatant disregard of its commitments to IntraLinks to build and deliver a releasable form of the Project, Exadel all but walked away from their commitments to the Project.  As a result of breaches of duties, and other unlawful and unfair acts and actions, Exadel ultimately failed and neglected to deliver any working component part or usable form of the software.

(a)     Exadel Misses Early Deadlines and
        Project Goals

19.     Out of the box, Exadel failed and neglected to meet time deadlines and

Project goals, and to fulfill it contractual obligations to produce and deliver weekly "builds," and,

otherwise irretrievably, the Project.

20.     By early March, 2007 – only weeks before the entire Project was due to be

delivered for release – it first became apparent to IntraLinks that Exadel was going to be unable

to meet its commitment.

21.     Specifically, the components which were to have been developed pursuant

to the first SOW in January, 2007 – The Grid/Tree/Expand Collapse Grid – were delivered with

only partial functionality, little or no supporting documentation, and with numerous defects and

errors.  By e-mail dated March 1, 2007, IntraLinks advised Exadel that:

> The Grid/Tree/Expand Collapse Grid, etc. got posted to the demo
> site with little or no documentation or tutorial save for a demo
> application.  The difficulty here is that we need to understand
> what all of the attributes and behaviors of the components are in
> order to use it best, not just copy a sampling of the code from the
> demo application.  We also have issues with the quality of the
> documentation we're receiving.

22.     Moreover, although these components were to have been delivered in

January and/or February, Exadel failed and refused to produce to, or share with, IntraLinks any

data reflecting its internal test results for each of the builds it had delivered; it also failed and

refused to deliver user manuals and/or other documentation describing how the components

worked and methods for trouble-shooting problems with these components.

> Each time a new build is put up, we don't have any visibility into
> what was changed for that build.  Defects aren't checked against a

> specific build . . . . At this point in the Project, it is important for
> me to be able to track programs with defects being fixed.

23.     IntraLinks also experienced significant problems and delays with those

components that were delivered:

> So far we have logged 45 JIRA issues, with the vast majority
> coming in the past 3 or 4 days . . . . We have been running into
> Out of Memory errors in the demo site. This is troublesome
> because it leads us to think we'll run into our own memory
> problems with these components.

24.     In the end, most of the "builds" delivered for the first set of components

failed to work or to meet IntraLinks' quality control review, all of the builds failed to comply

with IntraLinks' internal standards and codes for computing, and the Project, on a stand-alone

basis, was functionally useless.

> (b)     Exadel Fails and Refuses to Devote
>         Sufficient Resources to Get the
>         Project Back on Track

25.     As the new components projects, defined in the second SOW, were due to

ramp-up, and as the Project as a whole continued to flounder, IntraLinks requested that Exadel

move full-time resources on site to work with the more than six IntraLinks developers that had

been dedicated to the Project in light of the problems IntraLinks had been experiencing with the

builds for the first round of components and the Project as a whole.

26.     In fact, IntraLinks had warned Exadel in early March, 2007 that the

Project was in danger of falling irretrievably behind:

> The new components project plan has consistently been out of
> date. According to the plans, the Expand Collapse Grip was to be
> finished on 2/16 and Drag and Drop on 1/22. The D&D
> functionality has been delivered long-since, and I was told that
> the finalized Expand Collapse Grid would be ready by tomorrow
> (Friday), neither of which is accurately represented in the plan.

> We had hoped to have someone from Exadel on-site full-time to
> help with integration issues, debugging, and overall support . . .
> we haven't made progress on this.

27.     By in or about mid-March, 2007 – weeks after the Project was to be

finalized, delivered and readied for release – it also became clear to IntraLinks that Exadel would

not provide full time on-site resources to support the Project or to deliver the software in any

timely and workmanlike manner.

28.     In fact, at a very critical juncture, IntraLinks discovered, following a code

review of the builds delivered to date, that Exadel had done little if any work on the Project for

several weeks, if not more:

> In looking at JIRA today, I'm concerned over the number of
> outstanding (especially major priority issue) bugs. There are
> currently 30 outstanding defects, of which HALF are majors . . . .
> I need to know what your plan is to address these, as for the past
> several weeks we've been at or greater than 20 open defects, so
> I'm concerned that the current team isn't able to keep up with the
> influx of issues.

29.     While Exadel initially acknowledged that "if level 1 and level 2 bugs are

not resolved by April 1, we would commit our offshore developers at no charge until

completion," Exadel failed and refused to honor that commitment.

30.     By late March, 2007, IntraLinks advised Exadel of its obligation to

commit full-time resources to the Project and of the problems and delays being caused as a result

of its failure to do so:

> Can you help me know what's up with Andrey's schedule? After
> talking to Fred 3 weeks ago, Andrey was supposed to be here full
> time for these 3 weeks. So far he's been here only part of one
> week, and he will only be here Tue-Thu this week . . . .

31.     Shortly thereafter, Exadel advised IntraLinks that it would not be able to devote the full-time resources it had promised:

> Andrei has asked if he can work from Chicago next week . . . . I am going to be out of the office on vacation tomorrow and next week, so I would like for you to confirm with Olga and Fima, the following weeks schedule for Andrei to make sure we can meet your requirements.

32.     Indeed, more than four months into the Project, Exadel still continued to miss deadlines, and failed and refused to devote the required resources it had committed to provide.  By e-mail, dated May 2, 2007, IntraLinks advised:

> As you may know, and as I have explained to Olga, we have a VERY critical Alpha release of our application coming up very soon.  Out development team is working extremely hard to prepare our application for this release, and I have been working with Olga to prioritize developments that we absolutely need fixed in order to have a successful release . . . .
>
> Right now I have 5 developers who are blocked waiting on issues to be resolved from Exadel.  In addition, as you have seen from my previous email to Olga, we're not getting a build this week until Friday.  My concern is that we are under very tight timelines right now, and I'm having trouble getting commitments and timelines from Olga and her team.  I sent her a list of Critical and showstopper defects last week that are required for alpha.  I asked her for timelines on when those would be addressed, and was told Monday she would have it.  Then Monday came and went, and Tuesday.  Then Tuesday came and went and now Wed . . . .
>
> Regarding the build schedule, Olga and I had agreed that we would take a build every 3 days, but we have not received one this week . . . .
>
> Please let me know what we can do to move forward, and keep a high degree of confidence and predictability around these processes.
>
> Additionally, I have been pushing Olga to get Andrey back here at least until Sergey shows up next week, but was told no.

- 9 -

33.    In the end, Exadel continued to deliver agreed to builds late and with

defects that remained unfixed and without a team dedicated to delivering the Project:

> I'm concerned that the size/makeup of the team isn't sufficient to
> deal with the number of outstanding issues. We currently have
> over 50 open defects/CRs in the system, and have never had
> fewer than 20.

(c)    Exadel Sticks IntraLinks with Only
       Certain Components of the Project,
       Which Themselves were Completely
       Unusable

34.    Those components that Exadel were ultimately able to deliver were

completely unusable. Indeed, most of the "builds" delivered failed to work or meet IntraLinks'

quality control reviews, and all of the builds failed to comply with IntraLinks' internal standards

and codes for computing.

35.    For example, the scroll bar, when tested, loaded the same runs over and

over again – a major performance/scalability problem for IntraLinks' system. The experience

was even worse when using the mouse scroll.

36.    Indeed, long past the due date for delivery, IntraLinks was forced to reject

whole builds:

> We are rejecting build R14. It breaks existing expand/collapse
> grid functionality and includes no defect fixes critical for an alpha
> [release].

(d)    Exadel Fails and Refuses to Mitigate
       the Defects

37.    Even after Exadel failed timely to deliver a usable version of the Project,

IntraLinks offered to continue to try and work with Exadel in an attempt to mitigate its loss. In

that connection, in mid-May, 2007, IntraLinks requested that Exadel dedicate full time resources

- 10 -

to attempt to address the numerous and repeat problems with the Program's functionality.

Exadel refused.

38.    In addition, Exadel failed to offer any plan to retrieve the Project, and refused to provide to, or share with, IntraLinks any data reflecting its internal test results for each of the builds it had delivered; it also failed to provide IntraLinks with user manuals and other documents discussing how the software worked and methods for troubleshooting problems with the software.

> Something has changed/happened on their end regarding Olga. She has become much less responsive recently, and that is adding to the difficulty. During the time when our connectivity to their JIRA system was down, I had asked her more than once to send a list of the defects for the RII build so I could better track their progress – but it was never done. I feel the same has happened with other requests for info or feedback that I've sent her recently.
>
> I've requested to have daily Live Meeting conference calls/desktop sharing in order to help expedite the knowledge transfer and troubleshooting process.
>
> Since we've had connectivity problems to the CVS server (same as JIRA issues), I've repeatedly asked them to send me the code; it has not happened yet.

39.    In the end, and as a result, IntraLinks was unable to salvage and work with any part of the software it received from Exadel. IntraLinks was forced, on extraordinarily short notice and at great expense, to engage another computer consulting group, to recreate the features of the Project.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Breach of Contract)

40.    IntraLinks repeats and realleges each and every allegation contained in paragraphs 1 though 39 of the Complaint as if fully set forth at length herein.

41.    IntraLinks and Exadel are each parties to various written agreements including the Agreement and Statements of Work governing the development and delivery of the Project. These agreements constitute valid and binding agreements.

42.    Under the terms of the parties' written agreements, Exadel agreed, among other things, to (1) assign a team of clearly identified and highly skilled software developers to work on the Project; (2) to complete the development and delivery of carefully defined components of the Project by clearly identified and mutually agreed dates certain; (3) to prepare and deliver supporting instructional documents with the software components; and (4) to complete the developments and delivery of the Project for a carefully designed and mutually agreed upon price.

43.    At all times, IntraLinks performed its duties pursuant to the terms of the agreements with Exadel.

44.    Exadel breached the express terms of its written agreements with IntraLinks by, among other things, reassigning members of the Project team at critical points in the development process; failing and neglecting to provide sufficient resources to complete the Project in a timely and competent manner; failing to deliver components by the deadlines agreed upon by the parties; failing to provide required and necessary documentation; and delivering only certain components materially different from, and inferior to, the specifications agreed upon by the parties.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Breach of Express Warranty)

45.    IntraLinks repeats and realleges each and every allegation contained in paragraphs 1 though 44 of the Complaint as if fully set forth at length herein.

- 12 -

46.     The Agreement contains an express warranty for the software to be

provided to IntraLinks for the Project.  Section 1.2.1 of the Agreement provides:

> All Deliverables, and IntraLinks' obligation to pay for such
> Deliverables, shall be subject to IntraLinks' review and
> acceptance of such Deliverables, such acceptance not to be
> unreasonably withheld.  In the event that IntraLinks rejects any
> Deliverables, IntraLinks will inform Contractor of the reasons for
> such rejection, and Contractor will use commercially reasonable
> efforts to promptly modify such Deliverables in accordance with
> IntraLinks' instructions and to redeliver such Deliverables to
> IntraLinks in accordance with the provisions of this section.

Section 4, entitled "Representations and Warranties," also provides, in part, that

"Contractor hereby represents and warrants that it . . . (b) will perform the services

in a professional and workmanlike manner."

47.     Exadel breached the express warranty contained in the Agreement by,

among other ways, delivering components to IntraLinks that contained numerous and significant

programming errors and deficiencies; delivering components that were materially different from,

and inferior to, the specification contained in the SOWs entered into by the parties; failing to

deliver associated documents with the Project components; and failing and refusing to remedy

defects timely identified by IntraLinks.

AS AND FOR A THIRD CAUSE OF ACTION
(Breach of the UCC's Implied Warranties of
Merchantability and Fitness for a Particular Purpose)

48.     IntraLinks repeats and realleges each and every allegation contained in

paragraphs 1 though 47 of the Complaint as if fully set forth at length herein.

49.     The Agreement specifies that it shall be governed by New York law.  The

Agreement and SOWs entered by the parties do not contain disclaimers of implied warranties.

- 13 -

50.    Exadel breached the implied warranties of merchantability and fitness for a particular purpose created by sections 2-314 and 2-315 of New York's Uniform Commercial Code by, among other things, failing to deliver the components of the Project that would pass without objection in the trade under the contract description; failing to deliver components that were fit for the ordinary purpose for which they were to be used; and, knowing that IntraLinks was relying on Exadel's skill and judgment to furnish the components for a particular and defined purpose, failing to deliver components fit for such purpose.

### AS AND FOR A FOURTH CAUSE OF ACTION
### (Breach of the Implied Covenant of Due Care)

51.    IntraLinks repeats and realleges each and every allegation contained in paragraphs 1 though 50 of the Complaint as if fully set forth at length herein.

52.    By reason of the parties' agreements and the common law, Exadel owed IntraLinks an obligation to exercise due care in developing and delivering the Project and all of its components.

53.    Exadel breached its obligation to exercise due cure by, among other things, reassigning members of the development team and/or failing and/or neglecting to make knowledgeable members available to IntraLinks during crucial points of the development process; removing key members of the development team from the Project at crucial points in time; failing to devote adequate time, resources, and attention to the Project; failing to deliver the Project components in a timely manner; failing to cure the numerous and obvious defects that plagued the Project components delivered; and failing to develop and deliver supporting documentation for the Project components delivered.

- 14 -

## AS AND FOR A FIFTH CAUSE OF ACTION
(Breach of the Implied Covenant of Good Faith and
Fair Dealing)

54.     IntraLinks repeats and realleges each and every allegation contained in

paragraphs 1 though 53 of the Complaint as if fully set forth at length herein.

55.     By reason of the parties' agreements and the common law, Exadel owed

IntraLinks an obligation of good faith and fair dealing in developing and delivering the Project

and all of its component parts,

56.     Exadel breached its obligation of good faith and fair dealing by, among

other things, reassigning members of the development team and/or failing and/or neglecting to

make knowledgeable members available to IntraLinks during crucial points of the development

process; removing key members of the development team from the Project at crucial points in

time; failing to devote adequate time, resources, and attention to the Project; failing to deliver the

Project components in a timely manner; failing to cure the numerous and obvious defects that

plagued the Project components delivered; and failing to develop and deliver supporting

documentation for the Project components delivered.

## AS AND FOR A SIXTH CAUSE OF ACTION
(Negligent Performance)

57.     IntraLinks repeats and realleges each and every allegation contained in

paragraphs 1 though 56 of the Complaint as if fully set forth at length herein.

58.     By reason of the parties agreements and the common law, Exadel owed

IntraLinks a duty to exercise reasonable care in developing and delivering the Project

components.

- 15 -

59.    Exadel failed to exercise reasonable care by, among other things, reassigning members of the development team and/or failing and/or neglecting to make knowledgeable members available to IntraLinks during crucial points of the development process; removing key members of the development team from the Project at crucial points in time; failing to devote adequate time, resources, and attention to the Project; failing to deliver the Project components in a timely manner; failing to cure the numerous and obvious defects that plagued the Project components delivered; and failing to develop and deliver supporting documentation for the Project components delivered.

WHEREFORE, IntraLinks respectfully demands judgment against Exadel awarding it:

(a)    damages of at least $250,000.00, plus interest, attributable to the amount paid by IntraLinks to Exadel;

(b)    damages in an amount to be fixed at trial, plus interest, attributable to the amounts IntraLinks paid to other software developers to develop a similar software program;

(c)    damages in an amount to be fixed at trial, plus interest, attributable to lost profits, lost business opportunities, and related expenses, proximately caused by the wrongful actions of Exadel; and

(d)    such other and further relief as to this Court seems just and proper.

- 16 -

Dated: New York, New York
         September 11, 2007

ANDERSON & OCHS, LLP

By:_____
         Mitchel H. Ochs
61 Broadway, Suite 2900
New York, New York  10006
(212) 334-3600

Attorneys for Plaintiff IntraLinks

Index No. 603034/07

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

INTRALINKS, INC.,

                Plaintiff,

       -against-

EXADEL, INC.,

                Defendant.

## SUMMONS AND COMPLAINT

ANDERSON & OCHS, LLP
ATTORNEYS FOR PLAINTIFF
INTRALINKS

OFFICE AND POST OFFICE ADDRESS, TELEPHONE
61 BROADWAY, SUITE 2900
NEW YORK, NEW YORK 10006

(212) 344-3600

**Exhibit B**

JUDGE SULLIVAN



SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------X

INTRALINKS, INC.,

07 CIV 8697

             Plaintiff,      :

                                           **NOTICE OF FILING**

      -against-           :      **<u>NOTICE OF REMOVAL</u>**

EXADEL, INC.,           :

             Defendant.    :
------------------------------------------------------------X

        **PLEASE TAKE NOTICE** that the above-named defendant Exadel, Inc. ("Defendant") did file in the United States District Court for the Southern District of New York, on the 9th day of October, 2007, a Notice of Removal of this action, originally pending in the Supreme Court of the State of New York, County of New York, under Index No. 603034/07, to the District Court, as provided by law.

        **PLEASE TAKE FURTHER NOTICE** that a copy of the Notice of Removal and a copy of all papers served on Plaintiff are annexed hereto.

Dated: New York, New York
       October 9, 2007

                              **KANE KESSLER, P.C.**

                            By: _____
                                Jeffrey H. Daichman
                                Gillian Overland
                    Attorneys for Defendant
                    1350 Avenue of the Americas
                    New York, New York 10019
                    (212) 541-6222

**TO:**   Mitchel H. Ochs, Esq.
       **ANDERSON & OCHS, LLP**
       Attorneys for Plaintiff
       61 Broadway, Suite 2900
       New York, New York 10006
       (212) 334-3600

NEW YORK
COUNTY CLERK'S OFFICE

OCT ^ 9 2007

NOT COMPARED
WITH COPY FILE

#276362.1

JUDGE SULLIVAN

**COPY**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
INTRALINKS, INC.,                                 :

                **Plaintiff,**            :

      **-against-**                         :          <u>NOTICE OF REMOVAL</u>

EXADEL, INC.,                                     :          **07 CIV 8697**

              **Defendant.**         :
-------------------------------------------------------X

      **PLEASE TAKE NOTICE**, that pursuant to 28 U.S.C. §§1332 and 1446,

defendant Exadel, Inc. ("Defendant"), by its attorneys, Kane Kessler, P.C., hereby files its Notice

of Removal of the above-captioned action to this Court from the Supreme Court of the State of

New York, County of New York, Index No. 603034/07, and states as follows:

           1.      This is a civil action for which the District Court of the United States has

diversity jurisdiction under 28 U.S.C. § 1332 in that the parties are citizens of different states and

the amount in controversy exceeds the sum of $75,000.00.

           2.      Specifically, Plaintiff Intralinks, Inc. ("Plaintiff") alleges in its Complaint

that it is a Delaware corporation with a principal place of business at 1372 Broadway, New York,

New York. Plaintiff's summons and complaint is annexed hereto as Exhibit "A".

           3.      Defendant is a California Corporation with a principal place of business at

1850 Gateway Boulevard, Suite 1080, Concord, California.

           4.      On or about September 11, 2007, Plaintiff commenced a lawsuit in the

Supreme Court of the State of New York, County of New York, by filing a summons and

complaint, in which it asserted claims against Defendant for, <u>inter alia</u>, breach of contract,

claiming damages of at least $250,000.00.

NEW YORK
COUNTY CLERK'S OFFICE

OCT 9 2007

NOT COMPARED
WITH COPY FILE

#276356.1

5.    Thirty days have not yet elapsed since Defendant received a copy of the aforesaid complaint and removal is, therefore, timely pursuant to 28 U.S.C. §1446(b).

6.    Promptly after filing this Notice of Removal, Defendant shall give written notice thereof to Plaintiff and shall file a true and correct copy of this Notice of Removal with the Clerk of the Supreme Court of the State of New York, County of New York, pursuant to 28 U.S.C. §1446(d).

**WHEREFORE**, Defendant respectfully requests that this action be removed to this Court from the Supreme Court of the State of New York and henceforth that this action be placed on this Court's docket for all further proceedings, the same as though this action had originally been instituted in this Court.

Dated: New York, New York
       October 9, 2007

                                      **KANE KESSLER, P.C.**

                                      By: _____
                                          Jeffrey H. Daichman (JD – 8802)
                                          Gillian Overland (GO – 7300)
                                      Attorneys for Defendant
                                      1350 Avenue of the Americas
                                      New York, New York 10019
                                      (212) 541-6222

TO:   Mitchel H. Ochs, Esq.
      **ANDERSON & OCHS, LLP**
      Attorneys for Plaintiff
      61 Broadway, Suite 2900
      New York, New York 10006
      (212) 334-3600

#276356.1

Exhibit A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

INTRALINKS, INC.,                                    :          Complaint Filed:
                                                                September 11, 2007
                          Plaintiff,                 :

         -against-                                   :          Index No.  603034/07
                                                                NEW YORK
EXADEL, INC.,                                        :          COUNTY CLERK'S OFFICE

                          Defendant.                 :          **SUMMONS**    SEP 11 1 2007

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X                    NOT COMPARED
         TO THE ABOVE-NAMED DEFENDANT:                                         WITH COPY FILED

         YOU ARE HEREBY SUMMONED to answer the Complaint in this action and to

serve a copy of your answer or, if the Complaint is not served with this Summons, to serve a

notice of appearance on plaintiff's attorney(s) within 20 days after service of this Summons,

exclusive of the day of service (or within 30 days after service is completed if this Summons is

not personally delivered to you within the State of New York); and in case of your failure to

appear or answer, judgment will be taken against you by default for the relief demanded in the

Complaint.

         The basis for venue is a written agreement between the parties fixing the place of

trial in New York Country, New York.

Dated: New York, New York
         September 11, 2007

                                        ANDERSON & OCHS, LLP

                                        By: _____
                                             Mitchel H. Ochs
                                        61 Broadway, Suite 2900
                                        New York, New York  10006
                                        (212) 334-3600

                                        Attorneys for Plaintiff IntraLinks

Defendant's Address:

Exadel, Inc.
c/o C T Corporation System
111 Eighth Avenue
New York, New York  10011

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

INTRALINKS, INC.,                                    Index No.: 603034/07

                         Plaintiff,

              -against-                               **COMPLAINT**

EXADEL, INC.,

                         Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

      Plaintiff, IntraLinks, Inc. ("IntraLinks"), by and through counsel, as and for its

Complaint against defendant Exadel, Inc. ("Exadel"), alleges as follows:

## PRELIMINARY STATEMENT

    1.    IntraLinks engaged Exadel to build, on a time-is-of-the-essence basis, a

state of the art software program containing flexible, reusable, user interface components to be

specifically designed for use with IntraLinks' next-generation business application (the

"Project"). Midstream into the Project, Exadel effectively abandoned the Project by, among

other ways: (a) reassigning certain key developers/project managers, who, from the beginning,

had been working on, and were well-familiar with, the Project; (b) replacing those resources with

fewer, part-time, personnel entirely unfamiliar with, and unable to complete, the Project; (c)

reneging on its earlier commitment to develop and deliver certain essential components of the

Project precisely because of the lack of resources it was willing to devote; and (d) then

delivering, in an untimely manner, a stripped-down version of only certain elements of the

Project. Exadel strung IntraLinks along in the process, promising/representing to fix functional

and performance defects that, in the end, Exadel was unable/unwilling to do, all the while exerting leverage to continue to collect monthly fees. Because of breached promises, missed deadlines, dropped balls and inexcusable neglect, Exadel ultimately failed to deliver the Project in any usable form.

2.      By this action, Intralinks seeks recovery against Exadel for the hundreds of thousands of dollars already paid Exadel, and the many hundreds of thousands of dollars more in costs incurred to redevelop a working form of the Project, as well as other lost opportunity damages as a result of the delayed rollout and implementation of the Project, all due to the unlawful actions of Exadel.

## STATEMENT OF CASE

A.      The Parties

3.      IntraLinks is a corporation organized and existing under the laws of the State of Delaware, and having its principal place of business at 1372 Broadway, New York, New York. IntraLinks provides secure, online, document sharing services between and among large financial, legal, accounting, and other businesses.

4.      Upon information and belief, Exadel is a corporation organized and existing under the laws of the State of California, and having its principal place of business at 1850 Gateway Blvd., Suite 1080, Concord, California. Upon information and belief, Exadel is in the business of providing specialty software programs and related computer consulting services.

B.      Jurisdiction and Venue

5.      This Court has jurisdiction over the subject matter of IntraLinks' claims pursuant to Rule 302 of the Civil Practice Law and Rules of the State of New York.

- 2 -

6.    This Court has personal jurisdiction over Exadel, which has expressly consented to the exclusive personal jurisdiction of the state and federal courts located in New York County, New York. In addition, Exadel regularly and systematically conducts business in New York, and the causes of action against it arise from: (a) the transaction of business in New York, and/or (b) tortious acts committed by it in New York, and/or (c) tortious acts committed by it outside New York where it either regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or delivered or services rendered in New York, or expects or reasonably should expect its acts to have consequences in New York and derives substantial revenues from interstate and international commerce.

C.    <u>Background Facts</u>

7.    Beginning in or about the later Summer or early Fall of 2006, IntraLinks began considering outsourcing a software development project to develop generic visual components for IntraLinks' use in building secure websites for its customers.

8.    The Project was a critical part of IntraLinks' next-generation application, intended to enable its clients to better interface and use its proprietary document sharing services using state of the art technology.

9.    In that connection, in or about the Fall of 2006, representatives of IntraLinks met with representatives of Exadel to discuss the development and delivery of this software. During these discussions, IntraLinks made most clear the importance of the software to its business application under development as well as the time-of-the-essence requirements for delivery and implementation of the Project.

- 3 -

### IntraLinks Engages Exadel

10.    Following on these discussions, in or about late December, 2006 or early January, 2007, IntraLinks and Exadel entered into a contractor agreement (the "Agreement"). The Agreement memorialized Exadel's retention to perform various computer development and consulting services on a task-by-task basis, as would be further defined in agreed-upon Statements of Work ("SOWs").

11.    Under the terms of the Agreement, Exadel expressly undertook to provide sufficient qualified personnel to perform any and all work developed and delivered pursuant to an agreed-upon SOW in a competent and workmanlike manner, and to do so in a timely and professional manner consistent with industry standards.

12.    Exadel further agreed that all software delivered to IntraLinks would be free of programming errors and from defects in workmanship and materials, and would conform to the performance capabilities, characteristics, specifications, functions, and other descriptions and standards applicable thereunder and as set forth in the related SOW.

### The Parties Define the Project, and the Time and Cost of Development

13.    In or about December, 2006 and/or January, 2007, the parties entered into two SOWs governing the scope, timing and cost of the design, development and delivery of the Project.

14.    Among other things, the SOWs defined the component parts or "deliverables" for the Project into nine separate components including: (a) Advanced Data Grid; (b) Advanced Data Tree; (c) Dialog Window; (d) Split Pane; (e) Drag Drop Tooltips; (f) Search Bar; (g) Expand/Collapse Grid; (h) Filter Bar; and (i) Tags.

- 4 -

15.     Exadel further committed to commence development work on the Project on or before January 15, 2007, and to complete and deliver all component parts on or before March 2, 2007, in stages, or "builds," each representing a finished individual element of the Project.

16.     Exadel further undertook to devote a specific number of full-time and part-time personnel, both off-shore and on-shore, including a Project Manager, a Project Architect, Senior Program Developers, and a Quality Assurance team.  Exadel estimated the cost to develop and deliver the Project, based on the agreed upon timeline for completion of the Projects and the cost of the dedicated resources, payable on a monthly flat-fee basis during the term of the Agreement.

17.     Finally, Exadel agreed that all software deliverables would meet IntraLinks' internal uniform codes and standards for computing.

### Exadel Fails and Neglects to Build and Deliver the Project In Breach of Its Duties

18.     On the heels of the execution of the two SOWs, and in blatant disregard of its commitments to IntraLinks to build and deliver a releasable form of the Project, Exadel all but walked away from their commitments to the Project.  As a result of breaches of duties, and other unlawful and unfair acts and actions, Exadel ultimately failed and neglected to deliver any working component part or usable form of the software.

(a)    Exadel Misses Early Deadlines and
       Project Goals

19.    Out of the box, Exadel failed and neglected to meet time deadlines and Project goals, and to fulfill it contractual obligations to produce and deliver weekly "builds," and, otherwise irretrievably, the Project.

20.    By early March, 2007 – only weeks before the entire Project was due to be delivered for release – it first became apparent to IntraLinks that Exadel was going to be unable to meet its commitment.

21.    Specifically, the components which were to have been developed pursuant to the first SOW in January, 2007 – The Grid/Tree/Expand Collapse Grid – were delivered with only partial functionality, little or no supporting documentation, and with numerous defects and errors. By e-mail dated March 1, 2007, IntraLinks advised Exadel that:

> The Grid/Tree/Expand Collapse Grid, etc. got posted to the demo site with little or no documentation or tutorial save for a demo application. The difficulty here is that we need to understand what all of the attributes and behaviors of the components are in order to use it best, not just copy a sampling of the code from the demo application. We also have issues with the quality of the documentation we're receiving.

22.    Moreover, although these components were to have been delivered in January and/or February, Exadel failed and refused to produce to, or share with, IntraLinks any data reflecting its internal test results for each of the builds it had delivered; it also failed and refused to deliver user manuals and/or other documentation describing how the components worked and methods for trouble-shooting problems with these components.

> Each time a new build is put up, we don't have any visibility into what was changed for that build. Defects aren't checked against a

- 6 -

specific build . . . . At this point in the Project, it is important for
me to be able to track programs with defects being fixed.

23.    IntraLinks also experienced significant problems and delays with those

components that were delivered:

So far we have logged 45 JIRA issues, with the vast majority
coming in the past 3 or 4 days . . . . We have been running into
Out of Memory errors in the demo site.  This is troublesome
because it leads us to think we'll run into our own memory
problems with these components.

24.    In the end, most of the "builds" delivered for the first set of components

failed to work or to meet IntraLinks' quality control review, all of the builds failed to comply

with IntraLinks' internal standards and codes for computing, and the Project, on a stand-alone

basis, was functionally useless.

(b)    Exadel Fails and Refuses to Devote
Sufficient Resources to Get the
Project Back on Track

25.    As the new components projects, defined in the second SOW, were due to

ramp-up, and as the Project as a whole continued to flounder, IntraLinks requested that Exadel

move full-time resources on site to work with the more than six IntraLinks developers that had

been dedicated to the Project in light of the problems IntraLinks had been experiencing with the

builds for the first round of components and the Project as a whole.

26.    In fact, IntraLinks had warned Exadel in early March, 2007 that the

Project was in danger of falling irretrievably behind:

The new components project plan has consistently been out of
date.  According to the plans, the Expand Collapse Grip was to be
finished on 2/16 and Drag and Drop on 1/22.  The D&D
functionality has been delivered long-since, and I was told that
the finalized Expand Collapse Grid would be ready by tomorrow
(Friday), neither of which is accurately represented in the plan.

> We had hoped to have someone from Exadel on-site full-time to
> help with integration issues, debugging, and overall support . . . .
> we haven't made progress on this.

27.    By in or about mid-March, 2007 – weeks after the Project was to be

finalized, delivered and readied for release – it also became clear to IntraLinks that Exadel would

not provide full time on-site resources to support the Project or to deliver the software in any

timely and workmanlike manner.

28.    In fact, at a very critical juncture, IntraLinks discovered, following a code

review of the builds delivered to date, that Exadel had done little if any work on the Project for

several weeks, if not more:

> In looking at JIRA today, I'm concerned over the number of
> outstanding (especially major priority issue) bugs.  There are
> currently 30 outstanding defects, of which HALF are majors . . . .
> I need to know what your plan is to address these, as for the past
> several weeks we've been at or greater than 20 open defects, so
> I'm concerned that the current team isn't able to keep up with the
> influx of issues.

29.    While Exadel initially acknowledged that "if level 1 and level 2 bugs are

not resolved by April 1, we would commit our offshore developers at no charge until

completion," Exadel failed and refused to honor that commitment.

30.    By late March, 2007, IntraLinks advised Exadel of its obligation to

commit full-time resources to the Project and of the problems and delays being caused as a result

of its failure to do so:

> Can you help me know what's up with Andrey's schedule? After
> talking to Fred 3 weeks ago, Andrey was supposed to be here full
> time for these 3 weeks.  So far he's been here only part of one
> week, and he will only be here Tue-Thu this week . . . .

31.    Shortly thereafter, Exadel advised IntraLinks that it would not be able to devote the full-time resources it had promised:

> Andrei has asked if he can work from Chicago next week . . . . I am going to be out of the office on vacation tomorrow and next week, so I would like for you to confirm with Olga and Fima, the following weeks schedule for Andrei to make sure we can meet your requirements.

32.    Indeed, more than four months into the Project, Exadel still continued to miss deadlines, and failed and refused to devote the required resources it had committed to provide. By e-mail, dated May 2, 2007, IntraLinks advised:

> As you may know, and as I have explained to Olga, we have a VERY critical Alpha release of our application coming up very soon. Out development team is working extremely hard to prepare our application for this release, and I have been working with Olga to prioritize developments that we absolutely need fixed in order to have a successful release . . . .
>
> Right now I have 5 developers who are blocked waiting on issues to be resolved from Exadel. In addition, as you have seen from my previous email to Olga, we're not getting a build this week until Friday. My concern is that we are under very tight timelines right now, and I'm having trouble getting commitments and timelines from Olga and her team. I sent her a list of Critical and showstopper defects last week that are required for alpha. I asked her for timelines on when those would be addressed, and was told Monday she would have it. Then Monday came and went, and Tuesday. Then Tuesday came and went and now Wed . . . .
>
> Regarding the build schedule, Olga and I had agreed that we would take a build every 3 days, but we have not received one this week . . . .
>
> Please let me know what we can do to move forward, and keep a high degree of confidence and predictability around these processes.
>
> Additionally, I have been pushing Olga to get Andrey back here at least until Sergey shows up next week, but was told no.

- 9 -